UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR JORDAN MARTINEZ, | Case No.: 19-CV-2691 |
| Plaintiff, | COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| KISKA CONSTRUCTION INC. | |
| Defendant. | |

## COMPLAINT AND DEMAND FOR TRIAL

Plaintiff VICTOR JORDAN MARTINEZ, sues Defendant KISKA CONSTRUCTION COMPANY ("KISKA"), respectfully alleging:

### JURISDICTION AND VENUE

1.    This a case of admiralty and maritime jurisdiction, under Section 33 of the Merchant Marine Act of 1920, 46 U.S.C. §688, commonly known as the Jones Act and all the statutes amendatory and supplemental thereto are applicable to this action.  The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. Section 30104, the Seaman's Wage Act, 46 U.S.C. Section 30313 and the General Maritime Law of the United States.

2.    The actions and omissions complained of herein occurred in navigable waters in, around, and off the coast of the State of New York, in navigable waters near

Brooklyn and Queens, New York at or near the Marine Parkway Bridge, a construction project contractually owned and operated by Defendant KISKA CONSTRUCTION INC. ('KISKA').

Venue is appropriate per 28 U.S.C. 1391(b)(1) and (2), (c), (d).

3.     The matter in controversy exceeds, exclusive of interests and costs, the sum of $75,000.00.  Pursuant to 28 U.S.C. 1331 and 46 U.S.C. 668(a), this Court has jurisdiction.

### PARTIES

4.     Plaintiff Victor Jordan Martinez is an American citizen of the United States of America, residing in the State of New York.

5.     Defendant KISKA CONSTRUCTION, INC. is a Delaware corporation having its principal place of business, operating in, and engaging in commerce, in (and with) the State of New York.  KISKA is a dual capacity employer-vessel owner and was acting in a capacity as vessel owner in relation to Plaintiff's injury.

### FACTS

6.     Before June, 2016 KISKA bid 98.5 million dollars to work on and repair the MTA's Marine Parkway Bridge Project in Brooklyn, New York.  The Marine Parkway Gil Hodges Memorial Bridge was opened by the Marine Parkway

2

Authority in 1937 to provide access from Brooklyn to Queens Rockaway Peninsula. The scope of KISKA's work included 36 months of "Movable Bridge Rehabilitation" that covered "Electrical & Mechanical Rehabilitation of Lift Bridge, Miscellaneous Structural Repairs, Lead Abatement and Painting of Structural Steel and Five Standpipe System".

7.      Plaintiff, an experienced boat captain, rescue operator, and safety inspector who is licensed, certified and schooled in safety inspection, on and before June, 2016, worked for KISKA as a safety spotter / inspector / supervisor, under a Collective Bargaining Agreement with Structural Steel and Bridge Painters of Greater New York Local Union 806 District Council Number 9 International Union of Painters and Allied Trades AFL-CIO, CLC and New York Structural Steel Painting Contractors Association Inc.

8.      Plaintiff's job duties for KISKA required him to work on a boat, owned by KISKA, to oversee KISKA-contracted workers above, in, around, and below Marine Parkway Bridge "navigable" waters, and to and from nearby docks.

9.      Substantially all of Plaintiff's job duties (in duration and nature) were performed on and connected to the vessel to which he was assigned while it was in navigable waters performing seagoing activities, and consisted of, for example (i.e., not exhaustively) piloting the vessel, overseeing working employees and civilians

from various stations in the water around the work area, making sure employees were hooked properly onto the bridge, designing a safety emergency plan, overseeing water safety buoys, ensuring workers safely transported materials from the docks to the bridge, and if there was an emergency Plaintiff's job duties included rescue of individuals out of the water, all of which Plaintiff did from his position on the vessel ("safety and rescue skiff").

10.    Utilizing the safety and rescue skiff, Plaintiff aided the navigation of the vessel, contributed to the function of the vessel and to the accomplishment of its mission, and did the vessel's work.  In so doing, Plaintiff's employment regularly exposed him to the perils of seagoing.

11.    On June 9, 2016, while in the course of his employment with Defendant KISKA, Plaintiff Martinez became dizzy and lost consciousness, hitting his head and injuring his back and body.  Martinez's therapy dog, a Rottweiler, also lost consciousness.  Martinez was able to make a distress call on the radio and a rescue operation was conducted returning Martinez, his therapy dog, and the vessel to shore.  Upon returning to the marina, Martinez asked for medical help.  KISKA agents refused medical attention and transport.  Martinez, several hours later, regained some strength and consciousness, and became lucid enough to be concerned for himself and the care of his therapy dog, and was forced to seek a taxicab as transportation to a veterinarian for his dog and to a hospital for himself.

12.     Medical Records from Franklin Medical Center, where Martinez was admitted on June 9, 2016 at 4:30 pm, report his principal diagnosis as "Toxic effect of carbon monoxide".  Veterinarian records report "co [carbon monoxide] toxicity" for the dog.

13.     As a result of Carbon Monoxide inhalation and toxicity, Martinez fell and injured his head and back.  Martinez was diagnosed with head contusions (occipital with loss of consciousness), right paracentral disc protrusion indenting the thecal sac and resulting in canal stenosis at L4-5 level, disc bulge at the L3-4 level, which can and in this case, were caused by trauma from the fall aboard Kiska's vessel. Since this injury, Martinez has experienced lumbar radiculopathy, pain in his back and legs, painful bilateral tingling and swelling in his feet, diminished pedal pulses, diminished range of motion and a slow deliberate gait as well as numbness in his right arm.  Martinez also experienced chest and rib pain and pain from injury to his spinal cord.  All of these injuries were proximately caused by the incident that occurred on June 9, 2016 (according to Independent Medical Examination later conducted on Martinez as part of his Workers Compensation claim, which was denied, see below).  Plaintiff as of the filing of this Complaint has been recommended Anterior Cervical Discectomy and Fusion spinal cord surgery.

14.     On multiple occasions before June 9, 2016, Plaintiff complained to KISKA that the safety and rescue skiff / vessel was operating "sluggish".

15.    According to U.S. Department of Homeland Security and the U.S. Coast Guard Boating Circular 86 dated August 2008, Carbon Monoxide warning decals are required on all boats.

16.    KISKA didn't have Carbon Monoxide warning decals aboard the safety and rescue skiff / vessel nor did KISKA have Carbon Monoxide Detectors, commonplace technology utilized in the maritime industry.

17.    The skiff / vessel Mr. Martinez was on had Yamaha outboard motors. Yamaha was sued in 2013 for exhaust defect in their Yamaha outboard motors.  This lawsuit against Yamaha constructively placed KISKA on notice that Yamaha outboard motors exhausts were defective.

18.    Martinez complained multiple times in the weeks and months leading up to June 9, 2016 that the vessel in question was performing sluggishly.  KISKA agents ignored Martinez's demands for inspection and repair of the vessel.

19.    Defendant was responsible for inspecting and repairing the aforesaid vessel.

Defendant owned possession of the aforesaid vessel, its gear and equipment.

20.    Defendant KISKA was the employer of the seaman of the aforesaid vessel.

21.    Defendant staffed a single seaman, Plaintiff, on the aforesaid safety skiff /vessel.  Defendant was required to, but did not, employ enough staff for the skiff

pursuant to OSHA Regulations requiring requisite coverage while employees are above water. Having a designated safety operator available in the event of emergency is required by OSHA. A single seaman cannot both pilot the vessel and perform rescue operations simultaneously. OSHA requires breaks; when the operator is on break another operator must be designated to provide the requisite coverage while employees are above water. No substitute designated operator was employed by KISKA and no other safety inspector was employed by KISKA while Plaintiff was working. Plaintiff informed KISKA of this failure. Defendant refused to employ more safety & rescue seamen. A designated safety substitute operator is particularly important in the event the safety operator needs assistance.

22. At all times hereinafter mentioned, there was imposed upon the Defendant a duty and obligation to furnish and provide Plaintiff with a safe place in which to work, safe conditions in which to work, safe tools and equipment, and sufficient staff. Defendant KISKA failed to fulfills these duties and obligations.

23. On multiple times before June 2016 Plaintiff complained to KISKA about insufficient staff and that the engines of his vessel were performing inadequately. Plaintiff requested KISKA inspect the motors of the skiff. KISKA failed to fix, inspect, and heed Plaintiff's warnings despite Martinez's multiple complaints.

24.     The acts of negligence and unseaworthiness that caused the casualty were known or should have been known by the vessel owner.  As a result of KISKA's failure to fix, inspect, and heed Plaintiff's warnings on June 9, 2016, while operating on navigable waters Martinez and his dog became ill from Carbon Monoxide poisoning.  Martinez injured his head, spinal cord and suffered personal injuries. Instead of providing medical attention and or transporting Plaintiff to medical attention KISKA agents told Plaintiff to drink milk.  KISKA agents refused Plaintiff further medical attention and threatened him with termination if he did not return to work.

25.     In the following days when Martinez missed work because of Carbon Monoxide poisoning and resulting toxicity, KISKA agents informed Martinez he was required to report for work and his medical condition did not excuse him. Martinez attempted to return to work, but could not.  Because of his physical incapacity to return to work, KISKA fired Martinez and cancelled his medical insurance.  Martinez in fact found out he was fired when the hospital rejected his insurance after an unsuccessful attempt to return to work days several days after he was poisoned.  This violates multiple land-based statutes requiring continuing coverage, not to mention OSHA and maritime law.

26.     On or about June 9, 2016, while in the course of his employment aboard the aforesaid vessel owned and operated by Defendant, Plaintiff was caused to sustain

serious injuries, without any fault on his part and wholly and solely by reason of the negligence, recklessness and carelessness of the Defendant, its agents, servants and/or employees, and by reason of their failure to provide Plaintiff with a seaworthy vessel, a safe place in which to work, safe conditions in which to work, safe tools and equipment.

27.     Martinez brought a Workers Compensation claim; however, his claim was denied based on fraud on the tribunal.  According to the Workers Compensation ("WC") documents, Judge William Dugan wrote upon Hearing on December 7, 2016 that Mr. Martinez was not covered by the WC scheme because Martinez already had an ongoing Jones Act claim.  This was incorrect.  KISKA agents knew this was untrue, but KISKA misinformed the WC tribunal, a lack of candor for KISKA's own benefit intentionally depriving Plaintiff Jones Act-mandated seaman compensation.

## FIRST CLAIM FOR RELIEF – MAINTENANCE AND CURE

28.     Under general maritime law, a shipowner has an obligation to care for a seaman injured during the course of maritime employment.  This obligation includes payment for any injury or illness, which manifests itself during employment, regardless of the source of the injury or whether it preexisted the journey.

29.     Seamen who are injured while at sea are entitled to maintenance and cure from their employers. Maintenance is a seaman's day-to-day living expenses. Cure is the seaman's medical costs. Employers are obligated to pay maintenance and cure until the seaman is fit for duty, or until he has reached a point where additional medical treatment will not help him. See *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525 (1938).

30.     Employers' obligation to pay maintenance and cure arises from maritime common law. The Merchant Marine Act of 1920 (The Jones Act) provides seamen with additional protections.  To be eligible to claim maintenance and cure against a shipowner, a seaman must be "in the service of his ship" at the time of the injury.  There is no dispute Martinez qualifies.

31.     Under maintenance and cure a seaman is entitled to receive food and lodging of a kind and quality received aboard ship, as well as necessary medical services to the point of maximum cure.

The point of maximum cure is reached on the date that a seaman's physician determines that further treatment is unlikely to result in the betterment of the seaman's condition. This can include a determination that the incapacity is permanent.  Doubts are to be resolved in the seaman's favor.

32.    It has been just shy of 3 years since seaman Martinez was injured, his physician now believes spinal cord surgery will help Martinez achieve betterment of his condition.

33.    KISKA has consistently refused to provide Plaintiff Martinez with any maintenance and cure whatsoever, which constitutes bad faith.

34.    Due to injury caused by KISKA on a KISKA-owned vessel, Plaintiff sustained medical bills for treatment, diagnosis, and imaging, all to Plaintiff's economic damages in an amount to be proven at trial.  Due to his injury, Plaintiff was unable to work from June 9, 2016 to present. Plaintiff is entitled to maintenance, which Defendant has intentionally and unreasonably failed to pay, entitling Plaintiff to payment of economic damages in an amount to be determined at trial.

35.    Defendants willfully and callously delayed, failed and refused to pay Plaintiff's entire maintenance and delayed providing the plaintiff the level of cure that the Plaintiff needed.  Defendants' failure to pay Plaintiff's entire maintenance and cure is willful, arbitrary, capricious, and in callous disregard for Plaintiff's rights as a seaman. As such, Plaintiff would be entitled to attorney's fee under the General Maritime Law of the United States. Further Defendants unreasonably failed to pay or provide Plaintiff with maintenance and cure which aggravated his condition and caused Plaintiff to suffer additional compensatory damages including but not limited

to the aggravation of Plaintiff's physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital expenses in the past and into the future. Under 46 U.S.C.A. Section 10313, Plaintiff is entitled to his earned wages, vacation pay, bonus, deductions, and two days wages for each day payment is delayed.

## SECOND CLAIM - FAILURE TO TREAT AGAINST DEFENDANT

36.    Plaintiff re-alleges, incorporates by reference and adopts all paragraphs as though originally alleged herein.

37.    On or about the previously stated date, Plaintiff was employed by Defendant as a seaman and was a member of the vessel's crew. The vessel was in navigable waters.

38.    It was the duty of Defendants to provide Plaintiff with prompt, proper and adequate medical care.

39.    Defendants intentionally failed to provide Plaintiff with prompt, proper, adequate, and complete medical care. This conduct includes, but is not limited to: a. Defendant not giving Plaintiff medical care in a timely manner after his initial injury; and or b. Defendant sending Plaintiff back to work after he became injured

which aggravated his injuries and made them worse; c. Defendant firing Plaintiff soon thereafter and refusing to pay compensation.

40.    Due to Defendant's willful and reckless failure to treat Plaintiff's medical conditions, and due to Defendant's provision of substandard medical care in reckless disregard of Plaintiff's rights, Plaintiff seeks a claim for punitive and exemplary damages against Defendant.

41.    Due to Defendant's breaches of its non-delegable duty to provide prompt medical attention, Plaintiff is entitled to an award of attorneys' fees against Defendant.

42.    As a direct and proximate result of Defendants' failure, Plaintiff suffered additional pain, disability and or Plaintiff's recovery was prolonged. In addition, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred additional medical expenses in the care and treatment of plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and plaintiff's working ability and earning capacity has been impaired.

The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

43.    This Count is alleged separately from Jones Act Negligence pursuant to Joyce v. Atlantic Richfield Company, 651 F.2d 676 (10th Cir. 1981) which states, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

### THIRD CLAIM FOR RELIEF – JONES ACT - UNSEAWORTHY

44.    Plaintiff incorporates by reference and re-alleges all previous paragraphs.

45.    Under general maritime law, an owner or operator of a vessel has an absolute duty to ensure that a vessel is seaworthy.  This is a no-fault duty, and no showing of negligence or knowledge is required.

46.    A seaworthy vessel is one that is reasonably fit and suitable for its intended use. To prevail on a claim for unseaworthiness, a plaintiff must show both unseaworthiness and proximate causation.  The condition of seaworthiness is a relative one. A ship can be unseaworthy as to only one seaman. A condition of unseaworthiness can arise once the ship has set out to sea or from a transitory condition.  The factfinder ultimately determines the question of seaworthiness.

47.    Plaintiff's injuries were caused by Defendant's breach of its absolute duty to furnish a seaworthy vessel.  See *Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933 (1960)}.*

48.    Defendant's vessel was unseaworthy in multiple ways:

Unsafe and unfit motor caused Carbon Monoxide poisoning to Plaintiff.[1] Appurtenances of the vessel rendered the vessel dangerous and unseaworthy in that its motors were defective and emitting CO.  KISKA's failure to provide proper equipment and thus minimize hazards created an unreasonable risk for a seaman. Even if the appurtenance failed because of a latent defect, the owner cannot be absolved, since absence of fault is not a relevant consideration.[2] Appurtenances of the vessel rendered the vessel dangerous and unseaworthy in that it was not properly maintained;  it was unseaworthy in that it was an unsafe place to work; KISKA failed to provide sufficient equipment, adequate safety and recue staff, adequate training, supervision, and resources.

---

[1] Where the failure of a furnished appurtenance is dramatically obvious, as for example where a piece of equipment breaks, the inference of unseaworthiness is quite strong.  See, e.g., Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946); Mahnich v. Southern Steamship Co., 321 U.S. 96 (1944).

[2] See Boudoin v. Lykes Brothers Steamship Co., 348 U.S. 336 (1955); Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946)

49.   Plaintiff is not required to prove the shipowner's actual or constructive knowledge of the cause of the unseaworthiness; "neither is an essential element of a seaman's case". Id., pp 539-550.

But KISKA was on actual notice of the unseaworthiness from Plaintiff's requests for service due to sluggishness before the incident and was also on constructive notice from the Yamaha class action lawsuit for defective exhaust. Plaintiff also complained to KISKA about insufficient number of staff for safety and rescue.

50.   The unseaworthiness of Defendant's vessel was a legal cause of injury and damage to Plaintiff because Plaintiff was injured by reason of the following:

a. Failure to use reasonable care to provide and maintain proper and adequate machinery, crew and equipment; and/or

b. Failure to use reasonable care to provide Plaintiff a safe place to work; and/or

c. Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees and more particularly the Plaintiff, while engaged in the course of his employment on said vessel; and/or

d. Failure to use reasonable care to provide Plaintiff a safe place to work due to: i. failing to provide Plaintiff with an adequate crew that included personnel to complete necessary maintenance tasks; ii. instructing Plaintiff to complete a task without first ensuring that reasonable safety precautions had been taken; iii. failing

to have reasonable rules and regulations in place to ensure maintenance tasks are completed safely while taking all necessary safety precautions; iv. failing to have adequate personnel, time, and equipment to be able to carry out the duties in a reasonably safe manner, and/or v. failing to adhere to various safety regulations including OSHA, the International Safety Management Code and other applicable rules and guidelines; and vi. Failure to maintain the vessel in a reasonably safe condition; all of which caused the plaintiff to be injured; and/or

e. Failure to provide adequate instruction, and supervision to crew members and Plaintiff; and / or i. Defendants failed to train workers properly;

f. Defendant failed to fix, inspect, repair or otherwise have adequate tools and equipment on board the vessel which were necessary to complete the required repair; and/or

g. Defendant failed to provide Plaintiff with mechanized aids commonly available in the industry; and/or h. Failure to maintain the vessel and its equipment in a reasonably safe manner so as to prevent it from causing harm to Plaintiff; and/or

i. Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work.

51.    As a result of the unseaworthiness of the vessel, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss

of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past and future, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job, including but not limited to pension, health insurance, food, shelter, medical care, among others.

### FOURTH CLAIM FOR RELIEF - JONES ACT - NEGLIGENCE

52.    Defendant's negligence caused Plaintiff's injuries and pain, and disruption to his activities of daily living, entitling him to damages which Plaintiff seeks according to proof at trial.

53.    Where a plaintiff pleads both Jones Act [46 U.S.C.A. § 688, *et seq.*] negligence and unseaworthiness, a showing of negligence also establishes unseaworthiness and vice versa.    In action under 46 USCS Appx section 688, unseaworthiness of vessel or equipment may be relied upon as element of negligence as averment of duty to provide seaworthy vessel and equipment, violation of which

constitutes negligence. See, e.g., Mullen v Fitz Simons & Connell Dredge & Dock Co. (1948, CA7 Ill) 172 F2d 601, cert den 337 US 959, 93 L Ed 1758, 69 S Ct 1534;  Erickson v Shamrock Towing Co. (1948, DC NY) 81 F Supp 850, 1948 AMC 850.  For Jones Act plaintiff to meet "featherweight" burden of proof of negligence to prove that an injury was proximately caused by the unseaworthy condition, the unseaworthy condition must have played *a* part in bringing about or actually causing the injury, and the injury must be either a direct result or a reasonably probable consequence of the unseaworthy condition.  There are two elements which a plaintiff must prove in a Jones Act negligence claim:  (1) that there was a negligent act by the defendant, and (2) that there is a but-for causal connection between the act and the injury.  Plaintiff has proven both *per se*.

54.    The Jones Act is liberally construed in favor of plaintiffs. The "slight negligence" necessary to support an action under the Jones Act is defined as a failure to exercise great care, and that burden of proof is much less than the burden required to sustain recovery in ordinary negligence actions. Evidence of even slight negligence is sufficient to find liability under the Jones Act.

55.    The plaintiff's burden to prove the but-for causation element of a Jones Act negligence claim is minimal.  KISKA's negligent acts and omissions as described above caused the injury, rendering KISKA liable.

56.     Plaintiff's injuries are due to the fault and negligence of Defendants, and/or their agents, servants, and/or employees as follows:

a. Failure to use reasonable care to provide and maintain proper and adequate machinery, crew and equipment; and/or

b. Failure to use reasonable care to provide Plaintiff a safe place to work; and/or

c. Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees and more particularly the Plaintiff, while engaged in the course of his employment on said vessel; and/or

d. Failure to use reasonable care to provide Plaintiff a safe place to work due to: i. failing to provide Plaintiff with an adequate crew that included personnel to complete necessary maintenance tasks; ii. instructing Plaintiff to complete a task without first ensuring that reasonable safety precautions had been taken; iii. failing to properly train; iv. failing to have reasonable rules and regulations in place to ensure maintenance tasks are completed safely while taking all necessary safety precautions; v. failing to have adequate personnel, time, and equipment to be able to carry out the duties in a reasonably safe manner, and/or vi. failing to adhere to various safety regulations including OSHA, the International Safety Management Code, and construction standards, rules, and maritime law; all of which caused the plaintiff to be injured; and/or

e. Failure to provide adequate instruction, and supervision to crew members and

Plaintiff; and/or

f. Defendant failed to provide Plaintiff with mechanized aids commonly available in the industry; and/or

g. Failure to take measures to prevent their occurrence, and more particularly Plaintiff's incident; and/or

h. Failure to maintain the vessel and its equipment in a reasonably safe manner so as to prevent it from causing harm to Plaintiff; and/or

i. Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work.

57.     Prior to Plaintiff's incident Defendants failed to investigate the hazards to Plaintiff and then take the necessary steps to eliminate the hazards, minimize the hazard or heed warnings Plaintiff himself advised Defendant of the danger from the hazard.

58.     At all times material hereto, Defendants negligently failed to determine the hazards on the vessel to Plaintiff, failed to eliminate the hazard, failed to modify the hazard and failed to properly warn Plaintiff of the hazard. In addition, Defendants violated OSHA, the International Safety Management Code, construction and maritime rules and standards, and failed to have a proper, adequate and safe Management System. All of the above caused the Plaintiff to be injured.

59.    Defendants were warned and knew or should have known of the conditions causing Plaintiff's incident and did not correct them, or the conditions existed for a sufficient length of time so that Defendants in the exercise of reasonable care should have learned of them and corrected them.

60.    As a result of the negligence of Defendant and its agents, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past and future, and his working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

That Summons and Process issue as required by law;

That Judgment issue in favor of Plaintiff and against Defendant on all Counts of Plaintiff's Complaint

That Judgment issue for civil compensatory damages for injury, pain, suffering, mental anguish; Lost wages to date; Maintenance and Cure; Medical expenses, past, present, and future; an amount that compensates Martinez for his diminished future wage prospects / lost future wages / impaired earning capacity;

**Punitive Damages** for intentionally refusing to inspect or fix the vessel despite the safety inspector's requests to do so, the wanton refusal to provide medical care, payment of medical expenses, medical insurance, daily pay for food, shelter, maintenance and cure, and causing Martinez to endure pain, suffering, and extreme financial hardship;

Attorneys' Fees for frivolous defenses and stubborn litigiousness;

Such other and further relief as the court deems just and proper.

Dated:   7 May 2019
         New York, NY

Yours, etc.,

_____
Dayton P. Haigney (DH-3455)
**Local Counsel for Plaintiff**
233 Broadway, Suite 2348
New York, NY 10279
Tel: (212) 557-5590
DPHLAW@msn.com

Jeffrey E. Gewirtz (JG-8299)
Jeffrey E. Gewirtz, PC
**Lead Counsel for Plaintiff**
*Pro Hac Vice Pending*
Post Office BOX 4668
Routing # 19024
New York, NY10163-4668
Tel: (678) 613-3807
JGEWIRTZ@hotmail.com

To:      Kiska Construction Inc.
         43-10 11th Street, 2nd Floor
         Long Island City, NY 11101
         Tel: (718) 943-0400
         KISKAUSA@kiskaconstruction.com